UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CLARIDGE ASSOCIATES, LLC, JAMISCOTT, LLC, LESLIE SCHNEIDER, and LILLIAN SCHNEIDER,<br><br>               Plaintiffs,<br><br>        -v.-<br><br>ANTHONY SCHEPIS, FRANK CANELAS, RUTH CANELAS, and NORTHEAST CAPITAL MANAGEMENT, LLC,<br><br>               Defendants. | 15 Civ. 4514 (KPF)<br><br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

This dispute arises from the failed relationship between the limited partners to an investment partnership on one side, and the individuals who own and control the partnership's general partner on the other. Since Plaintiffs Leslie and Lillian Schneider, Claridge Associates, LLC, and Jamiscott, LLC filed suit against Defendants Anthony Schepis, Frank and Ruth Canelas, and Northeast Capital Management, LLC in June 2015, the parties have engaged in motion practice at the pleading stage and participated in arbitration proceedings. Now, Plaintiffs move the Court for partial summary judgment on two claims against Anthony Schepis and Frank Canelas for breach of fiduciary duty. Plaintiffs argue that because the breaches of fiduciary duty were adjudicated on the merits during arbitration proceedings in 2012, Defendants Schepis and Canelas are collaterally estopped from contesting them here. For the reasons that follow, the Court denies Plaintiffs' motion.

# BACKGROUND[1]

The Court has previously expounded on the relevant factual and procedural histories in the course of resolving Defendants' 2016 motion to dismiss. *See generally Claridge Assocs., LLC* v. *Schepis*, No. 15 Civ. 4514 (KPF), 2016 WL 2742425, at *2 (S.D.N.Y. May 10, 2016) ("*Claridge I*"). As a result, the Court assumes the parties' familiarity with the underlying facts and will only discuss what is necessary to resolve the instant motion.

Broadly speaking, this dispute arises out of an investment relationship. In late 2006 and early 2007, Plaintiffs invested approximately $7 million in the Pursuit Capital Management Fund I, L.P. (the "Fund"). (Pl. 56.1 ¶ 1). Pursuit Capital Management, LLC ("PCM") served as the Fund's general partner, and was itself owned, managed, and controlled by Defendants Schepis and Canelas. (*Id.* at ¶¶ 3, 5). In addition, Schepis and Canelas controlled an investment

---

[1] The facts stated herein are drawn from Plaintiffs' Rule 56.1 Statement of Material Facts Not in Dispute ("Pl. 56.1" (Dkt. #142)), and from Defendants' Rule 56.1(b) Statement of Disputed Material Facts ("Def. 56.1" (Dkt. #151)), the latter of which comprises both responses to Plaintiffs' assertions of material facts not in dispute and material facts ostensibly in dispute.

Citations to the parties' Rule 56.1 Statements incorporate by reference the documents and deposition testimony cited therein. *See* Local Rule 56.1(d). Generally speaking, where facts stated in a party's Local Rule 56.1 Statement are supported by testimonial or documentary evidence, and denied with only a conclusory statement by the other party, the Court finds such facts to be true. *See* Local Rule 56.1(c), (d); *Biberaj* v. *Pritchard Indus., Inc.*, 859 F. Supp. 2d 549, 553 n.3 (S.D.N.Y. 2012) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible." (internal quotation mark omitted) (quoting *T.Y.* v. *N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009))).

For ease of reference, Plaintiffs' supporting brief will be referred to as "Pl. Br." (Dkt. #140); Defendants' opposition brief as "Def. Opp." (Dkt. #150); and Plaintiffs' reply brief as "Pl. Reply" (Dkt. #157).

manager, Pursuit Investment Management, and a broker-dealer, Pursuit Partners. (*Id.* at ¶ 6).

By early 2009, the Fund was no longer making investments and provided investors with the option to exit or remain with the Fund. (Def. 56.1 ¶ 8). At that time, Plaintiffs held approximately 35% of the Fund's interest and elected to stay. (Pl. 56.1 ¶ 9). According to Plaintiffs, Defendants Schepis and Canelas withheld meaningful information about the fund from them over the next three years. (*Id.* at ¶ 10). As a result, on May 11, 2012, Plaintiffs filed a Statement of Claim against PCM with the American Arbitration Association (the "2012 Arbitration"). (*Id.*). Although Schepis and Canelas were not named parties in that arbitration, they were personally involved in their capacities as managers for PCM. (*Id.* at ¶ 12; Def. 56.1 ¶ 12).

The arbitration proceeded in two phases and yielded two separate awards. (Pl. 56.1 ¶¶ 15, 21). In the first phase, and as relevant here, Arbitrator Charles J. Moxley found that PCM had violated its fiduciary duties by enabling its broker-dealer, Pursuit Partners, to charge grossly improper markups to the Fund. (*Id.* at ¶ 22). Those markups were "grossly excessive and far beyond industry norms, rising to the level of deliberate looting." (Pl. Br., Ex. 12). Plaintiffs were awarded $2.2 million in compensatory damages related to the markups. (*Id.* at ¶ 23).

Arbitrator Moxley issued the first award on December 19, 2013. (Pl. Br., Ex. 12). On February 14, 2014, Schepis and Canelas withdrew PCM as a general partner of the Fund and installed Northeast as its successor. (Pl. 56.1

¶ 30). Schepis and Canelas then directed the transfer of the $1,186,346.38 in funds they were to return to Plaintiffs to an account maintained by a law firm. (*Id.* at ¶ 31). The parties dispute whether the law firm was under Defendants' control at the time. (*Compare id. with* Def. 56.1 ¶ 31). The New York State Supreme Court confirmed both Awards on March 20, 2014, entering judgments the following day against PCM. (Pl. 56.1 ¶ 26). That same day, PCM filed a Chapter 7 petition in the United States Bankruptcy Court for the District of Delaware. (*Id.* at ¶ 32).

Plaintiffs initiated this lawsuit on June 10, 2015. (Dkt. #1). In November 2015, Defendants moved to dismiss the complaint. (Dkt. #41, 42). Among other things, Defendants argued that the present action was precluded by the 2012 Arbitration under the doctrine of *res judicata*. *See Claridge I*, 2016 WL 2742425, at *9. In a May 10, 2016 Opinion, this Court compelled the parties to arbitrate the arbitrability of Defendants' *res judicata* defense, and, if found to be arbitrable, the preclusive effect of the 2012 Arbitration awards. *See id.* at *10. The Court stayed Plaintiffs' remaining claims pending the resolution of the arbitration proceedings. *See id.*

During the subsequent arbitration (the "2018 Arbitration"), Defendants argued that Plaintiffs were precluded from pursuing them for the same relief afforded by the 2012 Arbitration, as they were in privity with PCM. (Pl. 56.1 ¶ 37). On August 16, 2018, Arbitrator Richard H. Silberberg issued a ruling in favor of Plaintiffs, finding that the doctrine of *res judicata* did not bar the prosecution of Schneiders' claims asserted against Defendants Schepis and

4

Canelas in this action. (Pl. 56.1 ¶ 39). This Court confirmed the 2018 Award on October 4, 2018. (Dkt. #127).

On November 30, 2018, Plaintiffs submitted a letter to the Court indicating their intention to move for partial summary judgment on the limited issue of certain breach of fiduciary claims. (Dkt. #133). On December 6, 2018, the Court set a briefing schedule for Plaintiffs' anticipated motion. (Dkt. #134). Plaintiffs filed a motion for partial summary judgment, along with supporting papers, on February 11, 2019. (Dkt. #139-42). Defendants opposed the motion on April 29, 2019. (Dkt. #150-51). Shortly thereafter, the parties requested a stay of this matter due to a pending mediation. (Dkt. #152). The Court stayed the matter until July 2, 2019, when the parties informed the Court that mediation had been unsuccessful. (Dkt. #154-55). On July 19, 2019, Plaintiffs replied to Defendants' opposition submissions. (Dkt. #157-58). Accordingly, the motion is fully briefed and ripe for decision.

## DISCUSSION

### A. Applicable Law

### 1. Summary Judgment Under Federal Rule of Civil Procedure 56

Rule 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986); *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Fireman's Fund Ins. Co.* v. *Great Am. Ins. Co. of N.Y.*, 822

F.3d 620, 631 n.12 (2d Cir. 2016) (internal quotation marks and citation

omitted). A fact is "material" if it "might affect the outcome of the suit under

the governing law[.]" *Anderson*, 477 U.S. at 248.

While the moving party "bears the initial burden of demonstrating 'the

absence of a genuine issue of material fact,'" *ICC Chem. Corp.* v. *Nordic Tankers*

*Trading a/s*, 186 F. Supp. 3d 296, 301 (S.D.N.Y. 2016) (quoting *Catrett*, 477

U.S. at 323), the party opposing summary judgment "must do more than

simply show that there is some metaphysical doubt as to the material facts,"

*Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see*

*also Brown* v. *Henderson*, 257 F.3d 246, 252 (2d Cir. 2001). Rather, the non-

moving party "must set forth specific facts showing that there is a genuine

issue for trial." *Parks Real Estate Purchasing Grp.* v. *St. Paul Fire & Marine Ins.*

*Co.*, 472 F.3d 33, 41 (2d Cir. 2006) (quoting Fed. R. Civ. P. 56(e)).

"When ruling on a summary judgment motion, the district court must

construe the facts in the light most favorable to the non-moving party and

must resolve all ambiguities and draw all reasonable inferences against the

movant." *Dallas Aerospace, Inc.* v. *CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir.

2003). In considering "what may reasonably be inferred" from evidence in the

record, however, the court should not accord the non-moving party the benefit

of "unreasonable inferences, or inferences at war with undisputed facts." *Berk*

v. *St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 342 (S.D.N.Y. 2005)

(quoting *Cty. of Suffolk* v. *Long Island Lighting Co.*, 907 F.2d 1295, 1318 (2d

Cir. 1990)). Moreover, "[t]hough [the Court] must accept as true the allegations of the party defending against the summary judgment motion, … conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak* v. *City of N.Y.*, 88 F.3d 63, 71 (2d Cir. 1996) (internal citation omitted) (citing *Matsushita*, 475 U.S. at 587; *Wyler* v. *United States*, 725 F.2d 156, 160 (2d Cir. 1983)); *accord Hicks* v. *Baines*, 593 F.3d 159, 166 (2d Cir. 2010).

## 2. Collateral Estoppel Generally

The preclusive effect of a prior judgment is dictated by the doctrines of claim preclusion (sometimes referred to as *res judicata*) and issue preclusion (sometimes referred to as collateral estoppel). *See Taylor* v. *Sturgell*, 553 U.S. 880, 892 (2008). Issue preclusion, which Plaintiffs assert in the instant motion, forecloses "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Id.*; *see generally Parklane Hosiery Co.* v. *Shore*, 439 U.S. 322, 326 (1979); *Marcel Fashions Grp., Inc.* v. *Lucky Brand Dungarees, Inc.*, 898 F.3d 232, 238 (2d Cir. 2018), *cert. granted*, No. 18-1086, 2019 WL 826028 (U.S. June 28, 2019); *S.E.C.* v. *Monarch Funding Corp.*, 192 F.3d 295, 303 (2d Cir. 1999).

"By 'preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate,'" claim preclusion and issue preclusion "protect against 'the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by

minimizing the possibility of inconsistent decisions.'" *Taylor*, 553 U.S. at 892

(quoting *Montana* v. *United States*, 440 U.S. 147, 153-54 (1979)); *see also*

*Marvel Characters, Inc.* v. *Simon*, 310 F.3d 280, 286 (2d Cir. 2002) ("These

related but distinct doctrines operate to prevent parties from contesting

matters that they have had a full and fair opportunity to litigate, thereby

conserving judicial resources and protecting parties from the expense and

vexation of multiple lawsuits.").

    For collateral estoppel to apply, four elements must be satisfied: "[i] the

issues of both proceedings must be identical, [ii] the relevant issues were

actually litigated and decided in the prior proceeding, [iii] there must have been

'full and fair opportunity' for the litigation of the issues in the prior proceeding,

and [iv] the issues were necessary to support a valid and final judgment on the

merits." *Cent. Hudson Gas & Elec. Corp.* v. *Empresa Naviera Santa S.A.*, 56

F.3d 359, 368 (2d Cir. 1995). In assessing these requirements, however, a

court must be mindful that "[d]espite the economies achieved by use of

collateral estoppel, it is not to be mechanically applied, for it is capable of

producing extraordinarily harsh and unfair results." *Remington Rand Corp.* v.

*Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1486 (2d Cir. 1995); *cf.*

*Parklane Hosiery Co.*, 439 U.S. at 331 ("We have concluded that the preferable

approach for dealing with these problems [inherent in the application of

offensive collateral estoppel] in the federal courts is not to preclude the use of

offensive collateral estoppel, but to grant trial courts broad discretion to

determine when it should be applied. The general rule should be that in cases

where a plaintiff could easily have joined in the earlier action or where, either for the reasons discussed above or for other reasons, the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel.").

**B.    Analysis**

Plaintiffs seek summary judgment in their favor on two claims for breach of fiduciary duty.  As alleged in the Complaint, Schepis and Canelas breached their fiduciary duties to Plaintiffs (i) by participating in a scheme to have Pursuit Partners charge unconscionable markups to the Fund for their own personal benefit; and (ii) by wrongfully transferring $1,186,346.38 in funds found to belong to the Schneiders for their own purposes.  (Compl. ¶ 64).  Both of those breaches, Plaintiffs claim, were established through the 2012 Arbitration against PCM.  (Pl. Br. 1).  As a result, Plaintiffs argue that collateral estoppel precludes Schepis and Canelas from relitigating either claim before this Court.  (*Id.*).

Only two elements of collateral estoppel are disputed by the parties, and the Court finds that genuine disputes of material fact exist as to both.  *First,* the parties dispute whether the issues of both proceedings were identical.  (Pl. Br. 9-11; Def. Opp. 3-7).  Plaintiffs argue that because Schepis and Canelas owe the same fiduciary duty to Plaintiffs as that owed by PCM, the identical issues were raised in the 2012 Arbitration.  (Pl. Br. 9-11).  Relying on *In re USACafes, L.P. Litigation,* 600 A.2d 43 (Del. Ch. 1991), Plaintiffs assert that "managers of limited liability companies that serve as the general partners for

9

limited partnerships owe limited partners direct fiduciary duties." (*Id.* at 9).[2]

Therefore, "the breaches of fiduciary duty established in the 2012 Arbitration

against PCM are equally applicable against its controlling principals, Schepis

and Canelas." (*Id.* at 11).

Defendants clarify that *USACafes* is limited to those instances where the

individuals personally benefitted from the conduct forming the basis of the

breach. (Def. Opp. 5 (citing *Bay Ctr. Apartments Owner, LLC* v. *Emery Bay PKI,*

*LLC*, No. 3658-VCS, 2009 WL 1124451, at *10 (Del. Ch. Apr. 20, 2009)

(unpublished memorandum decision))). Conceding that point, Plaintiffs argue

that the "personal benefit" requirement was met by Arbitrator Moxley's

determination that PCM, which was completely owned and controlled by, and

admittedly in privity with, Schepis and Canelas, breached its duty of loyalty by

allowing Schepis and Canelas through the Pursuit Broker Dealer, which they

also completely owned and controlled, to charge exorbitant mark-ups on

riskless transactions. (Pl. Reply 1).

In response, Defendants argue that the "personal benefit" requirement

was never decided during the 2012 Arbitration. (Def. Opp. 2). Instead, they

claim, Arbitrator Moxley only determined that *PCM* had breached its fiduciary

duty as a general partner in relation to Plaintiffs. (*Id.* at 3). "Ultimately,

nowhere did Arbitrator Moxley make *any* specific findings that Schepis and

Canelas individually benefitted from the excessive markups." (*Id.* at 11

---

[2]     As in *Claridge I*, both parties agree that Delaware law governs. (*See* Pl. Br. 10 n.6; Def.
        Opp. 3).

(emphasis in original)).  At best, Defendants argue, Arbitrator Moxley

determined that Pursuit Partners received the excessive markups, but did not

conduct any analysis as to whether Schepis and Canelas benefited from those

markups.  (*Id.*).

This genuine dispute of material fact as to whether the 2012 Arbitration

decided that Schepis and Canelas personally benefited from the breach is

enough to preclude summary judgment.  While the Court sees merit in

Plaintiffs' position, it cannot overlook Defendants' compelling argument that

nowhere in Arbitrator Moxley's decision does he make any findings as to the

personal benefit of Schepis and Canelas.  In any event, the Court must also

address the parties' dispute regarding whether the issues were necessary to

support a valid and final judgment on the merits, which dispute provides a

separate and independent basis for denial of Plaintiffs' motion.

On this second point, Defendants argue that even if Arbitrator Moxley

had found that Schepis and Canelas personally benefited from their breaches

of their fiduciary duties to Plaintiffs, such a finding was not a necessary,

essential, and dependent part of the 2012 Arbitration decisions.  (Def.

Opp. 12).  According to Defendants, this is self-evident from the fact that

Schepis and Canelas were not parties to the 2012 Arbitration, and therefore

there was no need to establish whether or not they had personally benefitted

from the subject transactions.  (*Id.*).  As Defendants note, in his holding,

Arbitrator Moxley found that "as to the mark-ups, this arbitration only involves

Claimants' claim against Respondent [PCM]."  (*Id.*).

11

Plaintiffs counter that Arbitrator Moxley's award made clear that his findings against PCM were directly based on the self-interested actions of its general partners:

> Here, PCM was not paying itself these excessive fees, it was paying them to the Pursuit Broker Dealer. PCM also was not on both sides of the transaction; only Schepis and Canelas were as individuals. Accordingly, it is axiomatic that Arbitrator Moxley established the necessary self-dealing through Schepis and Canelas' domination and control of PCM (the same basis of liability as sought here) and their domination and control of the Pursuit Broker Dealer.

(Pl. Reply 3). In order to find a breach of fiduciary duty on the part of PCM, Plaintiffs argue, Arbitrator Moxley necessarily had to find that Schepis and Canales were paying themselves fees on both sides of the transaction. (*Id.*).

Here again, the issue of whether Defendants' personal benefit — even if established in the 2012 Arbitration — was necessary to the 2012 Arbitration decision remains a dispute of material fact. Here again, Defendants' argument that there was no need to establish the personal benefit of Schepis and Canelas as they were non-parties to the 2012 Arbitration is enough to forestall summary judgment. As a result, the Court cannot enter summary judgment for Plaintiffs.

## CONCLUSION

For the reasons stated in this Opinion, Plaintiffs' motion for partial summary judgment is DENIED. The Clerk of Court is directed to terminate the motion at docket entry 139. The parties are directed to submit a joint status letter regarding proposed next steps in the case on or before **August 22, 2019**.

SO ORDERED.

Dated:     August 1, 2019
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge