UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CLARIDGE ASSOCIATES, LLC, JAMISCOTT,
LLC, LESLIE SCHNEIDER, and LILLIAN
SCHNEIDER,

                         Plaintiffs,

                -v.-

ANTHONY SCHEPIS, FRANK CANELAS,
RUTH CANELAS, and NORTHEAST CAPITAL
MANAGEMENT, LLC,

                         Defendants.

15 Civ. 4514 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

This is the second motion for partial summary judgment brought by

Plaintiffs Leslie and Lillian Schneider, Claridge Associates, LLC, and Jamiscott,

LLC in this suit, which arises from the failed relationship between the limited

partners to an investment partnership and the individuals who own and

control the partnership's general partner.  Since Plaintiffs initiated this suit

against Defendants Anthony Schepis, Frank Canelas, and Northeast Capital

Management, LLC ("Northeast") in June 2015, the parties have engaged in

motion practice at the pleadings stage, protracted arbitration proceedings, and

one round of partial summary judgment practice.

After failing to convince the Court that collateral estoppel entitled them

to summary judgment on their claims for breach of fiduciary duty, Plaintiffs

now seek the application of collateral estoppel to four subsidiary issues related

to those claims: (i) that certain mark-ups charged to the investment fund were

excessive and unreasonable; (ii) that Schepis and Canelas received personal

benefits from the mark-ups; (iii) that the Schneiders were on inquiry notice of claims related to the mark-ups in September of 2012; and (iv) that Pursuit Capital Management, LLC ("PCM"), the investment fund's general partner, was required to return money held in the fund to the Schneiders as an excessive holdback reserve.  Plaintiffs argue that these four issues were adjudicated on the merits during arbitration proceedings in 2012 and 2013.  For the reasons discussed herein, Plaintiffs' second motion for partial summary judgment is granted in part and denied in part.

BACKGROUND[1]

## A.    Factual Background

The Court has previously expounded on the history of this case in the course of resolving Defendants' 2016 motion to dismiss, *see generally Claridge*

---

[1]    The facts stated herein are drawn from the parties' submissions in connection with the instant motion for partial summary judgment, as well as those submitted in connection with Plaintiffs' first motion for partial summary judgment.  Plaintiffs' second Rule 56.1 Statement of Material Facts Not in Dispute is referred to as "Pl. 2d 56.1" (Dkt. #164), and Defendants' second Rule 56.1(b) Statement of Disputed Material Facts is referred to as "Def. 2d 56.1" (Dkt. #174).  Plaintiffs' first Rule 56.1 Statement of Material Facts Not in Dispute is referred to as "Pl. 1st 56.1" (Dkt. #142), and Defendants' first Rule 56.1(b) Statement of Disputed Material Facts is referred to as "Def. 1st 56.1" (Dkt. #151).  Defendants' Rule 56.1(b) statements comprise both responses to Plaintiffs' assertions of material facts not in dispute and material facts ostensibly in dispute.

Citations to the parties' Rule 56.1 Statements incorporate by reference the documents and deposition testimony cited therein.  *See* Local Rule 56.1(d).  Generally speaking, where facts stated in a party's Local Rule 56.1 Statement are supported by testimonial or documentary evidence, and denied with only a conclusory statement by the other party, the Court finds such facts to be true.  *See* Local Rule 56.1(c), (d); *Biberaj* v. *Pritchard Indus., Inc.*, 859 F. Supp. 2d 549, 553 n.3 (S.D.N.Y. 2012) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible." (internal quotation mark omitted) (quoting *T.Y.* v. *N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009))).

For ease of reference, Plaintiffs' brief in support of their second motion for partial summary judgment is referred to as "Pl. 2d Br." (Dkt. #165); Defendants' opposition brief as "Def. 2d Opp." (Dkt. #173); and Plaintiffs' reply brief as "Pl. 2d Reply" (Dkt. #177).  Plaintiffs' brief in support of their first motion for partial summary judgment is

*Assocs., LLC* v. *Schepis*, No. 15 Civ. 4514 (KPF), 2016 WL 2742425, at *2

(S.D.N.Y. May 10, 2016) ("*Claridge I*"), and has articulated the specific factual

and procedural background relevant to the instant motion in its Opinion and

Order adjudicating Plaintiffs' first motion for partial summary judgment, *see*

*generally Claridge Assocs., LLC* v. *Schepis*, No. 15 Civ. 4514 (KPF), 2019 WL

3495945, at *1-2 (S.D.N.Y. Aug. 1, 2019) ("*Claridge II*").   Certain of this

information is reproduced here for the convenience of the reader:

> Broadly speaking, this dispute arises out of an
> investment relationship.   In late 2006 and early 2007,
> Plaintiffs invested approximately $7 million in the
> Pursuit Capital Management Fund I, L.P. (the "Fund").
> [(Pl. 1st 56.1 ¶ 1)].   [PCM] served as the Fund's general
> partner, and was itself owned, managed, and controlled
> by Defendants Schepis and Canelas.   (*Id*. at ¶¶ 3, 5).   In
> addition, Schepis and Canelas controlled an investment
> manager, Pursuit Investment Management, and a
> broker-dealer, Pursuit Partners.   (*Id*. at ¶ 6).
>
> By early 2009, the Fund was no longer making
> investments and provided investors with the option to
> exit or remain with the Fund.   [(Def. 1st 56.1 ¶ 8)].   At
> that time, Plaintiffs held approximately 35% of the
> Fund's interest and elected to stay.   [(Pl. 1st 56.1 ¶ 9)].
> According to Plaintiffs, Defendants Schepis and Canelas
> withheld meaningful information about the fund from
> them over the next three years.   (*Id*. at ¶ 10).   As a
> result, on May 11, 2012, Plaintiffs filed a Statement of
> Claim against PCM with the American Arbitration
> Association (the "2012 Arbitration").   (*Id*.).   Although
> Schepis and Canelas were not named parties in that

---

referred to as "Pl. 1st Br." (Dkt. #140); Defendants' first opposition is referred to as "Def.
1st Opp." (Dkt. #150); and Plaintiffs' first reply brief is referred to as "Pl. 1st Reply"
(Dkt. #157). The exhibits attached to the Declaration of Evan W. Bolla in support of
Plaintiffs' first motion for partial summary judgment are referred to as "Bolla 1st Decl.,
Ex. [ ]" (Dkt. #141); and the Affidavit of Frank Canelas in opposition to Plaintiffs' second
Motion for partial summary judgment is referred to as "Canelas 2d Decl. ¶ [ ]" (Dkt.
#173, Ex. 1).  The transcript of the September 17, 2019 conference is referred to as
"Hr'g Tr." (Dkt. #166).

arbitration, they were personally involved in their capacities as managers for PCM. (*Id.* at ¶ 12; [Def. 1st 56.1 ¶ 12]).

*Claridge II*, 2019 WL 3495945, at *1-2.

The arbitration proceeded in two phases and yielded two separate awards. (Pl. 1st 56.1 ¶¶ 15, 21). Arbitrator Charles J. Moxley issued the first award on June 5, 2013 (Pl. 2d 56.1 ¶ 18; *see also* Bolla 1st Decl., Ex. 11 (the "Phase I Decision")), after a full arbitration hearing with both sides presenting expert testimony, witnesses — including Leslie Schneider and Anthony Schepis — and post-hearing supplemental briefing (*see* Bolla 1st Decl., Ex. 10 at 13-15). In the Phase I Decision, and as relevant here, Arbitrator Moxley found that the Schneiders had not been on inquiry notice of the mark-up claims until "late 2012," when they made certain discoveries in filings submitted in a related litigation. (Phase I Decision 44; *see also* Pl. 1st 56.1 ¶ 18).[2] Arbitrator Moxley also determined that PCM was allowing the Fund to maintain an unreasonable holdback reserve and that the Schneiders were entitled to a return of a portion of those funds, a sum of $1,186,346.38. (Phase I Decision 37). Arbitrator Moxley deferred ruling on several elements of the mark-up claims until the second phase of the arbitration. (Pl. 1st 56.1 ¶ 18).

---

[2]   Although Defendants now dispute the fact that Arbitrator Moxley decided that Plaintiffs' claims were not time-barred in the Phase I arbitration (*see* Def. 2d 56.1 ¶ 21), they conceded this same fact in their Rule 56.1 statement submitted in connection with Plaintiffs' first motion for partial summary judgment (*see* Def. 1st 56.1 ¶ 18).

The arbitration continued to Phase II, where additional testimony was presented, culminating in a Phase II award that Arbitrator Moxley issued on December 19, 2013.  (Bolla 1st Decl., Ex. 12 (the "Phase II Decision"); Pl. 2d 56.1 ¶¶ 21, 24).  In the Phase II Decision, Arbitrator Moxley found that PCM had violated its fiduciary duties by enabling its broker-dealer, Pursuit Partners, to charge improper markups to the Fund.  (Pl. 2d 56.1 ¶ 25).  Those markups were "grossly excessive and far beyond industry norms, rising to the level of deliberate looting."  (Phase II Decision 12).  Plaintiffs were awarded $2.2 million in compensatory damages related to the markups.  (Pl. 2d 56.1 ¶ 26).

Claiming insolvency, PCM did not participate in Phase II of the arbitration.  (Canelas 2d Decl. ¶ 6).  Yet less than one month after Arbitrator Moxley issued the Phase II Decision, PCM retained the law firm DLA Piper to litigate a vigorous collateral attack on the arbitration, seeking to vacate the award because, *inter alia*, PCM failed to participate in Phase II.  (Bolla 1st Decl., Ex. 16; *see also id.* at Ex. 17; Pl. 1st 56.1 ¶¶ 24, 27).  Shortly thereafter, on February 14, 2014, Schepis and Canelas withdrew PCM as a general partner of the Fund and installed Northeast as its successor.  (Pl. 1st 56.1 ¶ 30).  Schepis and Canelas then directed the transfer of the $1,186,346.38 in funds that they were to return to Plaintiffs to an account maintained by a law firm.  (*Id.* at ¶ 31).[3]  The parties dispute whether the law firm was under

---

[3]     Here, too, although Defendants now deny that Schepis and Canelas directed the transfer, and instead assert that it was directed by Northeast (*see* Def. 2d 56.1 ¶ 34), Defendants already conceded this fact in responding to Plaintiffs' first motion for partial summary judgment (*see* Def. 1st 56.1 ¶ 31).

Defendants' control at the time.  (*Compare id.*, *with* Def. 1st 56.1 ¶ 31).  On

March 20, 2014, the New York State Supreme Court adopted the Phase I and

Phase II awards in full, denying PCM's motion to vacate and entering

judgments the following day against PCM.  (Pl. 1st 56.1 ¶¶ 26-27; *see also*

Bolla 1st Decl., Ex. 18-19).  That same day, PCM filed a Chapter 7 petition in

the United States Bankruptcy Court for the District of Delaware.  (Pl. 1st 56.1

¶ 32).

**B.    Procedural Background**

Plaintiffs initiated this lawsuit on June 10, 2015.  (Dkt. #1).  As

summarized in *Claridge II*:

> In November 2015, Defendants moved to dismiss the
> complaint.  (Dkt. #41, 42).   Among other things,
> Defendants argued that the present action was
> precluded by the 2012 Arbitration under the doctrine of
> *res judicata.  See Claridge I*, 2016 WL 2742425, at *9.
> In a May 10, 2016 Opinion, this Court compelled the
> parties to arbitrate the arbitrability of Defendants' *res
> judicata* defense, and, if found to be arbitrable, the
> preclusive effect of the 2012 Arbitration awards.  *See id.*
> at *10.  The Court stayed Plaintiffs' remaining claims
> pending the resolution of the arbitration proceedings.
> *See id.*
>
> During  the  subsequent  arbitration  (the  "2018
> Arbitration"), Defendants argued that Plaintiffs were
> precluded from pursuing them for the same relief
> afforded by the 2012 Arbitration, as they were in privity
> with PCM.  [(Pl. 1st 56.1 ¶ 37)].  On August 16, 2018,
> Arbitrator Richard H. Silberberg issued a ruling in favor
> of Plaintiffs, finding that the doctrine of *res judicata* did
> not bar the prosecution of Schneiders' claims asserted
> against Defendants Schepis and Canelas in this action.
> [*Id.* at ¶ 39].  This Court confirmed the 2018 Award on
> October 4, 2018.  (Dkt. #127).

*Claridge II*, 2019 WL 3495945, at *2.

On November 30, 2018, Plaintiffs submitted a letter to the Court indicating their intention to move for partial summary judgment. (Dkt. #133). In particular, Plaintiffs sought entry of judgment on two breach of fiduciary duty claims against Schepis and Canelas: first, with respect to the taking of improper markups, and second, with respect to the distribution of the Schneiders' money in contravention of the Phase II Decision. Plaintiffs argued that because the breaches of fiduciary duty were adjudicated on the merits during the 2012 Arbitration proceedings, Defendants were collaterally estopped from contesting them here. (Dkt. #140). By Opinion and Order dated August 1, 2019, the Court denied Plaintiffs' first motion for partial summary judgment, finding that Plaintiffs had failed to establish that Schepis and Canelas received personal benefits from PCM's improper conduct, and therefore the Court could not conclude that there were no disputed issues of material fact as to Schepis's and Canelas's purported breaches of fiduciary duty. *Claridge II*, 2019 WL 3495945, at *5-6.

In a letter to the Court dated August 22, 2019, Plaintiffs stated that although they had failed to establish collateral estoppel as to the entirety of their breach of fiduciary duty claims, they maintained an interest in having the Court determine whether Defendants were collaterally estopped from disputing some of the predicate elements of those claims. (Dkt. #161). At a September 17, 2019 status conference, the Court and Plaintiffs' counsel clarified the relationship between the first motion for partial summary

judgment and Plaintiffs' subsequent request to apply collateral estoppel to

certain predicate elements of the breach of fiduciary duty claims:

> THE COURT:  ... [I]n your partial summary judgment motion you were going for the home run.  You were asking me to make a finding about breach of fiduciary duty claims and to extend them from the folks who had been involved in the arbitration to the individual defendants, in this case, Mr. Schepis and Mr. Canelas.  I think what I'm understanding from your August 22[, 2019] joint letter to me is that you were also hoping to hit a few singles, in the alternative, and that if I wasn't going to find that as a matter of law these individual defendants had engaged in breaches of their fiduciary duty, either in connection with excessive markups or in connection with a particular transfer that you believe to be unlawful and unauthorized — if I wasn't going to go that far, the home run that I've just mentioned — that I could at least agree that you hit a few singles with respect to some of the antecedent factual issues.  Is that what you were asking me to do?
>
> MR. BOLLA:  Yes, your Honor.

(Hr'g Tr. 3).  Thereafter, the Court set a briefing schedule for Plaintiffs' second

motion for partial summary judgment.  (*Id.* at 25-26).  Plaintiffs filed their

opening brief, along with supporting papers, on October 15, 2019 (Dkt. #163-

65); Defendants opposed the motion on December 20, 2019 (Dkt. #173-74);

and Plaintiffs replied to Defendants' opposition submissions on February 6,

2020 (Dkt. #177).  Accordingly, the motion is fully briefed and ripe for decision.

## DISCUSSION

**A.   Applicable Law**

**1.     Summary Judgment Under Federal Rule of Civil Procedure 56**

Rule 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986); *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).[4]  A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Fireman's Fund Ins. Co.* v. *Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (internal quotation marks and citation omitted).  A fact is "material" if it "might affect the outcome of the suit under the governing law[.]"  *Anderson*, 477 U.S. at 248.

While the moving party "bears the initial burden of demonstrating 'the absence of a genuine issue of material fact,'" *ICC Chem. Corp.* v. *Nordic Tankers Trading a/s*, 186 F. Supp. 3d 296, 301 (S.D.N.Y. 2016) (quoting *Catrett*, 477 U.S. at 323), the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts,"

---

[4]     The 2010 Amendments to the Federal Rules of Civil Procedure revised the summary judgment standard from a genuine "issue" of material fact to a genuine "dispute" of material fact.  *See* Fed. R. Civ. P. 56, advisory comm. notes (2010 Amendments) (noting that the amendment to "[s]ubdivision (a) ... chang[es] only one word — genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination.").  This Court uses the post-amendment standard, but continues to be guided by pre-amendment Supreme Court and Second Circuit precedent that refer to "genuine issues of material fact."

*Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Brown* v. *Henderson*, 257 F.3d 246, 252 (2d Cir. 2001). Rather, the non-moving party "'must set forth specific facts showing that there is a genuine issue for trial.'" *Parks Real Estate Purchasing Grp.* v. *St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 41 (2d Cir. 2006) (quoting Fed. R. Civ. P. 56(e)).

"When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc.* v. *CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). In considering "what may reasonably be inferred" from evidence in the record, however, the court should not accord the non-moving party the benefit of "unreasonable inferences, or inferences at war with undisputed facts." *Berk* v. *St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 342 (S.D.N.Y. 2005) (quoting *Cty. of Suffolk* v. *Long Island Lighting Co.*, 907 F.2d 1295, 1318 (2d Cir. 1990)). Moreover, "[t]hough [the Court] must accept as true the allegations of the party defending against the summary judgment motion, ... conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak* v. *City of N.Y.*, 88 F.3d 63, 71 (2d Cir. 1996) (internal citation omitted) (citing *Matsushita*, 475 U.S. at 587; *Wyler* v. *United States*, 725 F.2d 156, 160 (2d Cir. 1983)); *accord Hicks* v. *Baines*, 593 F.3d 159, 166 (2d Cir. 2010).

10

### 2.    Collateral Estoppel

The preclusive effect of a prior judgment is dictated by the doctrines of claim preclusion (sometimes referred to as *res judicata*) and issue preclusion (sometimes referred to as collateral estoppel).  *See Taylor* v. *Sturgell*, 553 U.S. 880, 892 (2008).  Issue preclusion, which Plaintiffs assert in the instant motion, forecloses "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Id.*; *see generally Parklane Hosiery Co.* v. *Shore*, 439 U.S. 322, 326 (1979); *Simmons* v. *Trans Express Inc.*, 955 F.3d 325, 328 (2d Cir. 2020), *certified question accepted*, 35 N.Y.3d 966 (2020); *S.E.C.* v. *Monarch Funding Corp.,* 192 F.3d 295, 303 (2d Cir. 1999).

 "By 'preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate,'" claim preclusion and issue preclusion "protect against 'the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Taylor*, 553 U.S. at 892 (quoting *Montana* v. *United States*, 440 U.S. 147, 153-54 (1979)); *see also Marvel Characters, Inc.* v. *Simon*, 310 F.3d 280, 286 (2d Cir. 2002) ("These related but distinct doctrines operate to prevent parties from contesting matters that they have had a full and fair opportunity to litigate, thereby conserving judicial resources and protecting parties from the expense and vexation of multiple lawsuits.").

11

"In New York, collateral estoppel has two essential elements.  'First, the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and second, the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination.'" *Jenkins* v. *City of New York*, 478 F.3d 76, 85 (2d Cir. 2007) (quoting *Juan C.* v. *Cortines*, 89 N.Y.2d 659, 667 (1997)).[5]  "'The party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues ... whereas the party attempting to defeat its application has the burden of establishing the absence of a full and fair opportunity to litigate the issue.'" *Evans* v. *Ottimo*, 469 F.3d 278, 281-82 (2d Cir. 2006) (alteration in *Evans*) (quoting *Kaufman* v. *Eli Lilly & Co.*, 65 N.Y.2d 449, 456 (1985)).

In assessing these requirements, however, a court must be mindful that "[d]espite the economies achieved by use of collateral estoppel, it is not to be mechanically applied, for it is capable of producing extraordinarily harsh and unfair results." *Remington Rand Corp.* v. *Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1486 (2d Cir. 1995). The "preferable approach" for dealing with

---

[5]     The parties' briefing assumes that New York law governs the application of collateral estoppel in the instant case.  The Court agrees.  The 2012 Arbitration occurred in New York, and the New York State Supreme Court adopted the arbitration awards in full and entered judgment.  "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra* v. *Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).  "Because the [arbitration] awards ... were rendered in the context of a New York state action, 'the preclusive effect in federal court of [those] state-court judgment[s] is determined by [New York] law.'" *Jacobson* v. *Fireman's Fund Ins. Co.*, 111 F.3d 261, 265 (2d Cir. 1997) (final three alterations in *Jacobson*) (quoting *Migra*, 465 U.S. at 81).

problems inherent in the application of offensive collateral estoppel "is not to preclude the use of offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied." *Parklane Hosiery Co.*, 439 U.S. at 331 ("[I]n cases where a plaintiff could easily have joined in the earlier action or where, either for the reasons discussed above or for other reasons, the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel.").

## B.   Analysis

Plaintiffs seek summary judgment in their favor on four individual issues related to their breach of fiduciary duty claims, namely, that

> (i)   the mark-ups that Pursuit Partners charged the Fund were excessive and unreasonable ("Issue I");
>
> (ii)  Schepis and Canelas received personal benefits from the mark-ups ("Issue II");
>
> (iii)  the Schneiders were on inquiry notice of claims related to the mark-ups in September of 2012 ("Issue III"); and
>
> (iv)  PCM was required to return money held in the Fund to the Schneiders as an excessive holdback reserve ""Issue IV").

(Pl. 2d Br. 2).  All four of these issues, Plaintiffs claim, were established through the 2012 Arbitration against PCM.  (*Id.* at 1-2).  As a result, Plaintiffs contend that collateral estoppel precludes Schepis and Canelas from relitigating these issues before this Court.  (*Id.*).  Defendants focus almost exclusively on Issue II, arguing primarily that Arbitrator Moxley did not actually or necessarily find that Schepis and Canelas received personal

13

benefits.  (*See* Def. 2d Opp. 1-2, 4, 6-13).  As discussed in greater detail below, the Court agrees with Defendants that estoppel does not apply to Issue II, but agrees with Plaintiffs that collateral estoppel applies to Issues I, III, and IV.

### 1.    Schepis and Canelas Were in Privity with PCM

"[A] determination in a prior judicial proceeding collaterally estops a claim by a nonparty" only if that nonparty was in privity with the party to the prior proceeding.  *Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V.* v. *Schreiber*, 327 F.3d 173, 184-85 (2d Cir. 2003); *see also Ryan* v. *N.Y. Tel. Co.*, 62 N.Y.2d 494, 500 (1984).  Therefore, "privity exists either where: [i] 'a party to a previous suit was, at the time of the litigation, acting as either a fiduciary or organizational agent of the person against whom preclusion is asserted[;]' or [ii] the nonparty 'exercised some degree of actual control' over the conduct of the prior proceeding."  *Hallinan* v. *Republic Bank & Tr. Co.*, No. 06 Civ. 185 (HB), 2006 WL 1495232, at *3 (S.D.N.Y. June 1, 2006) (second alteration in original) (quoting *Stichting*, 327 F.3d at 185); *see also Buechel* v. *Bain*, 97 N.Y.2d 295, 304 (2001) (explaining that under New Yok law, "privity is 'an amorphous concept not easy of application,'" but that it at least includes "'those who are successors to a property interest, those who control an action although not formal parties to it, [and] those whose interests are represented by a party to the action" (quoting *Juan C.*, 89 N.Y.2d at 667-68)).

Schepis and Canelas were not named parties in the 2012 Arbitration, which arbitration was brought solely against PCM.  (*See* Bolla 1st Decl., Ex. 9).

14

However, Defendants have previously admitted that Schepis and Canelas were in privity with PCM: initially in the 2018 Arbitration and then again in their first Rule 56.1(b) Statement of Disputed Material Facts.  (*See* Bolla 1st Decl., Ex. 26-27; Def. 1st 56.1 ¶ 37).[6]  Indeed, at the 2018 Arbitration, Schepis and Canelas advanced detailed arguments in support of the position that they were privies of PCM.  (*See* Bolla 1st Decl., Ex. 26).  Further, at the 2018 Arbitration, Arbitrator Silberberg adopted Defendants' assertion that Schepis and Canelas were in privity with PCM, and ruled that collateral estoppel would have applied in the 2018 Arbitration if Schepis and Canelas had signed the arbitration agreement.  (*See* Bolla 1st Decl., Ex. 28).  Thus, the Court proceeds to determine whether the other elements required for the application of collateral estoppel are present.

### 2.   Collateral Estoppel Applies to Issue I

In ruling that PCM violated its fiduciary duty as to the excessive mark-ups, Arbitrator Moxley found after considering expert testimony on the issue that "mark-ups were grossly excessive and far beyond industry norms, rising to the level of deliberate looting."  (Phase II Decision 39; *see also id.* at 9-10, 38-46).  Thus, Plaintiffs argue that the issue of whether PCM's mark-ups were excessive and unreasonable was actually litigated and necessarily resolved by

---

[6]      In the Rule 56.1 statement submitted in connection with Plaintiffs' first motion for partial summary judgment, Defendants admitted the following fact: "During the subsequent arbitration which took place chiefly in 2018 ... , Schepis and Canelas argued that the Schneiders were precluded from pursuing them for the same relief afforded by the 2012 Arbitration *as they were in privity with PCM*."  (Def. 1st 56.1 ¶ 37 (emphasis added)).  The Court is unmoved by Defendants' current efforts to dispute an already conceded fact.  (*See* Pl. 2d 56.1 ¶ 41).

the arbitrator in ruling on the Schneiders' breach of fiduciary duty claims.  (*See* Pl. 2d Br. 7, 10-11, 13).

Defendants offer two arguments as to why collateral estoppel should not apply to Issue I.  First, they contend that this issue was not "actually litigated" because PCM did not participate in Phase II, where Arbitrator Moxley made this determination.  (Def. 2d Opp. 14).  Second, Defendants attack Arbitrator Moxley's decision on the merits, arguing that "[h]ad [PCM] ... defend[ed] the Phase II portion of the Arbitration, the evidence would have shown that the Plaintiffs herein helped instigate an exhaustive and comprehensive investigation by the [U.S. Securities and Exchange Commission (the "SEC")] into the very same markups at issue."  (*Id.* at 15).  Thus, Defendants say, the SEC's decision to decline to take any enforcement action demonstrates that Arbitrator Moxley's decision was wrong on the merits.  (*Id.* at 15-16).  As explained below, both arguments fail.

*First*, Defendants contend that their failure to participate in Phase II of the arbitration renders it a "default," and thus it is improper to apply collateral estoppel under New York law.  (Def. 2d Opp. 14).  However, as Plaintiffs note and as discussed below, regardless of whether the Phase II Decision is a default, this issue was in fact "actually litigated" for collateral estoppel purposes under New York law.  (*See* Pl. 2d Reply 5-7).  Defendants argue that PCM had "neither the means nor the incentive to continue to contest the Arbitration" in Phase II.  (Def. 2d Opp. 14).  But there is no evidence in the record to establish that PCM was somehow prevented or precluded from

16

participating in Phase II, nor that they actually lacked the means or incentive to do so.  Indeed, apart from self-serving *ipse dixit*, Defendants have offered no evidence to support their contention that they were unable to participate in Phase II.  (*See* Canelas 2d Decl. ¶¶ 6-11).  Defendants argue that the very fact that PCM subsequently filed for bankruptcy is evidence that PCM was unable to participate in Phase II.  (Def. 2d Opp. 14).  But PCM did not declare bankruptcy until March 2014.  (Canelas 2d Decl. ¶ 4).  Indeed, on January 14, 2014 — less than a month after Arbitrator Moxley issued the Phase II Decision and several months before PCM filed for bankruptcy — PCM directed the international law firm DLA Piper to file papers on its behalf, aggressively pursuing a collateral attack on the arbitration and seeking to vacate the award for the exact reason that Defendants raise here.  (Bolla 1st Decl., Ex. 16; *see also id.* at Ex. 17; Pl. 2d 56.1 ¶¶ 24, 27).  The New York State Supreme Court rejected this argument, denying PCM's motion to vacate and entering judgments against PCM.  (Pl. 2d 56.1 ¶¶ 26-27; *see also* Bolla 1st Decl., Ex. 18-19).

Under New York law, collateral estoppel may be applied "where the party against whom preclusion is sought appears in the prior action, yet wilfully and deliberately refuses to participate in those litigation proceedings, or abandons them, despite a full and fair opportunity to do so."  *In re Abady*, 800 N.Y.S.2d 651, 660 (1st Dep't 2005); *accord Kanat* v. *Ochsner*, 755 N.Y.S.2d 371, 374 (1st Dep't 2003).  The Court agrees with Plaintiffs that this is a situation in which Defendants "ha[ve], by deliberate action, refused to defend or litigate the charge

or allegation that is the subject of the preclusion request." *In re Abady*, 800 N.Y.S.2d at 660.  Defendants vigorously litigated Phase I of the arbitration, decided not to participate in Phase II, and then immediately commenced a counselled collateral attack on the arbitration proceeding, unsuccessfully asserting in a New York State court the same argument that they advance here. *Cf. Michelo* v. *Nat'l Collegiate Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668, 691 (S.D.N.Y. 2019) (refusing to apply collateral estoppel "because there is no indication that the ... plaintiffs 'appear[ed] in the prior action, yet willfully and deliberately refused to participate in those proceedings, or abandon[ed] them'" (first two alterations in original) (quoting *in re Abady*, 800 N.Y.S.2d at 660)).

*Second*, Defendants argue that Arbitrator Moxley's decision that the mark-ups were excessive is substantively wrong because the SEC declined to pursue an enforcement action as to this issue.  (Def. 2d Opp. 15-16).  The Court will not entertain a collateral attack on the merits of the arbitration decisions, especially after Defendants already sought and failed to vacate these decisions in state court.  (*See* Bolla 1st Decl., Ex. 16, 18-19).  *Accord Farber* v. *Goldman Sachs Grp., Inc.*, No. 10 Civ. 873 (BSJ), 2011 WL 666396, at *5 n.2 (S.D.N.Y. Feb. 16, 2011) ("To the extent Plaintiff is dissatisfied with [the arbitration] order dismissing his claims, the proper course would have been for Plaintiff to file a motion to vacate the order[.]").  Additionally, the fact that the SEC declined to initiate an enforcement action is irrelevant to the validity of Arbitrator Moxley's decision, as the SEC utilizes different standards and considers different factors in determining whether to initiate an enforcement

action.  Therefore, Plaintiffs are entitled to summary judgment on the application of collateral estoppel to Arbitrator Moxley's finding that the mark-ups were excessive.

### 3.    Collateral Estoppel Does Not Apply to Issue II

Plaintiffs next argue that collateral estoppel should apply to prevent Defendants from litigating whether Schepis and Canelas received personal benefits from the mark-ups.  (Pl. 2d Br. 1).  Plaintiffs assert that Issue II was decided by Arbitrator Moxley because it was "necessarily implied" in the Phase II Decision: to establish the necessary self-interest in the relationship between PCM and Pursuit Partners in determining that PCM breached its fiduciary duty in allowing the excessive mark-ups, Arbitrator Moxley necessarily had to find personal benefit.  (Pl. 2d Reply 9-10).  Defendants respond that Arbitrator Moxley did not actually and necessarily decide that Schepis and Canelas personally benefitted from the mark-ups, and even if he did make such a decision, it was not essential to the rulings because, *inter alia*, neither Schepis nor Canelas was a party to the arbitration.  (Def. 2d Opp. 1-2, 4, 6-13).

The parties may recall that Plaintiffs essentially raised this same issue in the first round of partial summary judgment briefing:

> Plaintiffs counter that Arbitrator Moxley's award made clear that his findings against PCM were directly based on the self-interested actions of its general partners [*i.e.*, Schepis and Canelas]:
>
> "Here, PCM was not paying itself these excessive fees, it was paying them to the Pursuit Broker Dealer.  PCM

19

> also was not on both sides of the transaction; only
> Schepis and Canelas were as individuals. Accordingly,
> it is axiomatic that Arbitrator Moxley established the
> necessary self-dealing through Schepis and Canelas'
> domination and control of PCM (the same basis of
> liability as sought here) and their domination and
> control of the Pursuit Broker Dealer." [Pl. 1st Reply 3]
>
> In order to find a breach of fiduciary duty on the part of
> PCM, Plaintiffs argue, Arbitrator Moxley necessarily had
> to find that Schepis and Canelas were paying
> themselves fees on both sides of the transaction. (*Id.*).

*Claridge II*, 2019 WL 3495945, at *5. The Court considered and rejected this

argument, declining to find that Arbitrator Moxley had actually decided that

Schepis and Canelas received personal benefits from the mark-ups — implicitly

or explicitly. *Id.* at *5. The Court also rejected the argument that any such

finding would have been essential to the arbitrator's decision. *Id.* at *5-6. As

the Court explained in *Claridge II*, Plaintiffs did not establish that summary

judgment was proper in applying collateral estoppel to this issue:

> Defendants argue that the "personal benefit"
> requirement was never decided during the 2012
> Arbitration. [(Def. 1st Opp. 2)]. Instead, they claim,
> Arbitrator Moxley only determined that PCM had
> breached its fiduciary duty as a general partner in
> relation to Plaintiffs. (*Id.* at 3). "Ultimately, nowhere
> did Arbitrator Moxley make *any* specific findings that
> Schepis and Canelas individually benefitted from the
> excessive markups." (*Id.* at 11 (emphasis in original)).
> At best, Defendants argue, Arbitrator Moxley
> determined that Pursuit Partners received the excessive
> markups, but did not conduct any analysis as to
> whether Schepis and Canelas benefited from those
> markups. (*Id.*).
>
> This genuine dispute of material fact as to whether the
> 2012 Arbitration decided that Schepis and Canelas
> personally benefited from the breach is enough to

> preclude summary judgment.  While the Court sees merit in Plaintiffs' position, it cannot overlook Defendants' compelling argument that nowhere in Arbitrator Moxley's decision does he make any findings as to the personal benefit of Schepis and Canelas.
>
> * * *
>
> Here again, the issue of whether Defendants' personal benefit — even if established in the 2012 Arbitration — was necessary to the 2012 Arbitration decision remains a dispute of material fact.  Here again, Defendants' argument that there was no need to establish the personal benefit of Schepis and Canelas as they were non-parties to the 2012 Arbitration is enough to forestall summary judgment.  As a result, the Court cannot enter summary judgment for Plaintiffs.

2019 WL 3495945, at *5-6.  In short, the Court has already considered and rejected Plaintiffs' argument that Arbitrator Moxley "implicitly" decided this issue, and therefore, summary judgment as to Issue II is denied.

### 4.    Collateral Estoppel Applies to Issue III

Plaintiffs seek to collaterally estop Defendants from litigating the issue of whether Plaintiffs had inquiry notice of the improper mark-ups prior to September of 2012.  (Pl. 2d Br. 1-2).  Plaintiffs have demonstrated that the identical question actually and necessarily was decided during the Phase I Arbitration.  (*See id.* at 9, 12-13; *see also* Phase I Decision 43-52).  In the Phase I Decision, Arbitrator Moxley found that Plaintiffs "established at the hearing that they were not aware or chargeable with knowledge of the alleged improper mark-ups until late 2012 when they received information concerning [related litigation against UBS]." (Phase I Decision 44).  Additionally, Defendants had a full and fair opportunity to litigate the issue in the

arbitration, as PCM vigorously litigated Phase I.  (*See generally* Phase I

Decision; *see also* Bolla 1st Decl., Ex. 10, 14).  Defendants raise three

objections to the application of collateral estoppel to Issue III, but none is

persuasive.

    *First*, Defendants argue that this Court's decision in *Claridge I*, denying

Defendants' motion to dismiss claims on the grounds that they were time-

barred, *see* 2016 WL 2742425, at *8, somehow precludes summary judgment

in favor of Plaintiffs on a finding that the claims accrued in September 2012.

(*See* Def. 2d Opp. 16).  In so doing, Defendants misread the Court's prior

opinion.  In *Claridge I*, the Court explained that "while the trades for which

Plaintiffs allege excessive mark-ups occurred in 2007, the arbitrator found that

Plaintiffs had no inquiry notice until 'late 2012'; this creates, *at the very least*, a

contested issue of fact regarding when Plaintiffs were chargeable with

knowledge of the mark-ups."  2016 WL 2742425, at *8 (emphasis added).  The

issue there was simply whether — based on the pleadings — Plaintiffs failed to

establish their breach of fiduciary duty claims were timely.  The Court did not

decide whether this was a contested issue of fact for the purpose of summary

judgment; rather, in declining to find that the claims were untimely, the Court

noted that Arbitrator Moxley had considered the same question and found the

claims to be timely, and that therefore dismissal was improper.  *Id.*

    *Second*, Defendants argue that "late 2012" is insufficiently clear language

for the Court to apply collateral estoppel to determine that Plaintiffs were on

inquiry notice in September 2012.  (Def. 2d Opp. 17).  However, as Plaintiffs

note, this issue was litigated at the arbitration, and an examination of the transcript of the Phase I arbitration hearing establishes that the specific date to which Arbitrator Moxley refers is September 18, 2020.  (*See* Bolla 1st Decl., Ex. 10 at 44; Pl. 2d Reply 2-3).  *See also Barbier* v. *Shearson Lehman Hutton Inc.*, 948 F.2d 117, 121 (2d Cir. 1991) ("'[I]f a ground for the arbitrator's decision can be inferred from the facts of the case, the award should be confirmed.'" (quoting *Sobel* v. *Hertz, Warner & Co.*, 469 F.2d 1211, 1216 (2d Cir. 1972))).  Furthermore, during the first round of summary judgment, Defendants conceded that the same language in the Phase I Decision meant that "Arbitrator Moxley … found that the Schneiders had not been on inquiry notice until September 2012."  (Def. 1st 56.1 ¶ 18).  Having already admitted that the decision was sufficiently clear to concede this exact point, Defendants may not now argue to the contrary.

*Third*, Defendants attack Arbitrator Moxley's decisions on the merits, arguing that in a 2018 deposition in a related case, Plaintiff Leslie Schneider "essentially admitted" that "she had virtual express notice of the markups … in 2008."  (*See* Def. 2d Opp. 17-18).  Putting aside that "essentially" admitting that one has "virtual" express notice is not the same as explicitly admitting actual express notice, the Court will not entertain a collateral attack on the merits of the arbitration decision for the reasons previously discussed. Defendants had the opportunity to develop this evidence in the 2012 Arbitration proceedings, which included sworn testimony from Leslie Schneider, and elected not to.  (*See* Bolla 1st Decl., Ex. 10).  Therefore,

23

Plaintiffs have established that Defendants are collaterally estopped from litigating Issue III.

### 5.   Collateral Estoppel Applies to Issue IV

The final issue raised by Plaintiffs as ripe for summary judgment concerns whether PCM was required to return money held in the Fund to the Schneiders.  (Pl. 2d Br. 1-2).  Plaintiffs argue that Arbitrator Moxley explicitly determined that PCM was allowing the Fund to maintain an unreasonable holdback reserve and that the Schneiders were entitled to a return of a portion of those funds, a sum of $1,186,346.38.  (*Id.*, *see also* Phase I Decision 37).  Plaintiffs have established that the identical question was before Arbitrator Moxley during the Phase 1 arbitration, and that it was actually and necessarily decided.  (*See* Pl. 2d Br. 9-10, 12-14; *see also* Phase I Decision 36-37).  As discussed above, Defendants had a full and fair opportunity to litigate the issue in the arbitration, especially because PCM actively participated in Phase I.  (*See generally* Phase I Decision; *see also* Bolla 1st Decl., Ex. 10, 14).

Defendants' arguments against summary judgment on Issue IV are unavailing.  *First*, Defendants contend that collateral estoppel is not warranted because Arbitrator Moxley failed to determine that Schepis and Canelas received personal benefits from the failure to return the money.  (Def. 2d Opp. 18).  However, as Plaintiffs note, they seek only the application of collateral estoppel to prevent Defendants from re-litigating the issue of whether PCM was ordered to return the money because it was not entitled to maintain an excessive holdback; Plaintiffs are not seeking a finding that Schepis and

Canelas benefitted from the improper transfer.  (Pl. 2d Reply 7-8).  *Second*, Defendants argue that because a New York State court failed to hold Defendants in contempt for transferring the funds to a party other than Plaintiffs, "the New York State Courts have already conclusively rejected the Plaintiffs' attempts to extend responsibility for the transfer of the $1.186 million to any party other than PCM." (Def. 2d Opp. 18-19).  But, as Plaintiffs explain, "whether a party is in contempt of a court order is an entirely different question than whether a party bears liability for the act." (Pl. 2d Reply 8).  The Phase I Decision clearly adjudicated this exact issue, and Defendants offer no further argument that Plaintiffs have failed to establish the elements necessary for the application of collateral estoppel.  Thus, Defendants are collaterally estopped from litigating Issue IV.

### 6.    The Equities Weigh in Favor of Applying Collateral Estoppel

The Court has determined that Plaintiffs have established the prerequisites for the application of collateral estoppel to Issues I, III, and IV. Defendants nevertheless ask the Court to "exercise its clear legal discretion" to decline to apply collateral estoppel.  (Def. 2d Opp. 14).  Pointing to PCM's failure to participate in Phase II of the arbitration, Defendants argue that such discretion is warranted because "'the first determination was made in circumstances where the losing party had little incentive to litigate the issues fully.'" (*Id.* at 15 (quoting *Remington Rand Corp.*, 68 F.3d at 1486)).  As an initial matter, this rationale would apply only to Issue I, inasmuch as Issues III and IV were decided at Phase I.  Additionally, as discussed extensively above,

PCM could have participated in Phase II, yet decided against it, opting instead to launch a collateral attack on the 2012 Arbitration.  More to the present point, PCM made a strategic decision to stop participating in the arbitration after losing at Phase I, but then reversed course immediately after Arbitrator Moxley issued the Phase II Decision by launching a counselled collateral attack against the decision, thereby directly undermining Defendants' claims here that it had "neither the means nor the incentive" to participate in Phase II. (Def. 2d Opp. 14; *but see* Bolla 1st Decl., Ex. 16-17).  Finally, as noted at the September 17, 2019 conference, litigation between these parties has been characterized by Defendants' obstruction and delay.  (*See* Hr'g Tr. 7-8; *see also* Pl. 2d Reply 11).  The equities favor the application of collateral estoppel given the significant time and expense already invested to adjudicate Issues I, III, and IV on the merits in the 2012 Arbitration.

## CONCLUSION

For the reasons stated in this Opinion, Plaintiffs' motion for partial summary judgment is GRANTED IN PART and DENIED IN PART.  The Clerk of Court is directed to terminate the motion at docket entry 163.  The parties are directed to submit a joint status letter regarding proposed next steps in the case on or before November 30, 2020.

SO ORDERED.

Dated:      November 5, 2020
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge