

Wiggin and Dana LLP          Paul Tuchmann
One Century Tower            203.498.4336
265 Church Street            203.782.2889 fax
New Haven, Connecticut       ptuchmann@wiggin.com
06510
www.wiggin.com

VIA ECF and @ Email to Failla_NYSDChambers@nysd.uscourts.gov

March 25, 2021

Hon. Katherine Polk Failla
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:      *Claridge Associates, LLC, et al.* v. *Schepis et al.*, No. 15-cv-4514-KPF

Dear Judge Failla:

Plaintiffs respectfully file this pre-motion submission requesting a conference to discuss Plaintiffs' anticipated motion for sanctions against Defendants for the spoilation of evidence.

Plaintiffs invested millions of dollars in Pursuit Capital Management Fund I, L.P. (the "Fund"), for which Pursuit Capital Management, LLC ("PCM") was the general partner until it was replaced by Northeast following PCM's 2014 bankruptcy. Defendants Schepis and Canelas control both PCM and Defendant Northeast Capital Management LLC. Plaintiffs allege that Defendants breached their fiduciary duties and wrongly enriched themselves by withholding, diverting, or expending money from the Fund that belonged to Plaintiffs. [Dkt. # 193].

Defendants and related entities have been litigating with Plaintiffs and other Fund investors since 2012.[1] Thus, since 2012, even before this lawsuit was filed in June 2015, [Dkt. #1] Defendants knew or should have known that they had obligations to preserve all potentially relevant documents in their possession, custody, or control in connection with this Action. *See, e.g., In re Gorsoan Ltd.*, 2020 WL 3172777, at *8 (S.D.N.Y. June 15, 2020) (setting forth this rule).  This Court has found that Schepis and Canelas were "in privity" with PCM. [Dkt. # 179, p. 15]. As such, there can be no doubt that Defendants had possession, custody, or control of their own documents and all documents in the possession, custody, or control of PCM, as well as other Pursuit-related entities they owned and controlled.

During discovery in the various litigations, Plaintiffs learned that Schepis and Canelas maintained an undisclosed backup archive system for their pursuitpartners.com e-mails and Bloomberg messages.  At Schepis' secret instruction, on December 22, 2016 (indisputably after this lawsuit was filed, as well as others filed by Plaintiffs and Fund investor Alpha Beta), Global Relay began implementing a document destruction policy that resulted in the complete and

---

[1] Other relevant litigations against Defendants and their related entities include: (1) the 2012 arbitration against PCM [see Dkt. #193]; (2) PCM's 2014 bankruptcy and related 2016 adversary proceeding; (3) *Claridge Assocs., LLC v. Pursuit Partners, LLC*, No. FST-CV15-6026069-S (Conn. Super. Ct.) (filed Aug. 2015); and (4) *Alpha Beta Capital, L.P. v. Pursuit Inv. Mgmt., LLC*, No. FST-CV15-5014970-S (Conn. Super. Ct.) (filed Sept. 2015).



March 25, 2021
Page 2

permanent destruction of any e-mails and Bloomberg messages then more than three years old, as well as the ongoing permanent destruction each night of emails newly turning three years old. As a result, 280,000 emails and 380,000 Bloomberg messages were deleted.

Plaintiffs did not discover this document destruction until early 2019.  Even then, a litigation hold was not instituted for the Global Relay archive until February 13, 2019 (and even then only upon order of the Delaware bankruptcy court). As a result, all documents pre-dating February 13, 2016, have been deleted from the Global Relay archive. *See* Ex. 1.

After being confronted with the undisclosed destruction of the Global Relay documents, Defendants claimed that their live e-mail inboxes contained any emails that would have been found in the Global Relay archive. This is clearly false. The current Global Relay archive contains 55,799 emails and 511,510 Bloomberg messages that hit on agreed-upon search terms. In contrast, only 5,276 emails and zero Bloomberg messages in Defendants' email boxes hit on the same search terms.  Moreover, the parties conducted a sampling of the email data that still exists in the Global Relay archive and what exists in the live email inboxes to test this assertion. The sampling as well as a mere comparison showed that the Global Relay archive and the live e-mail inboxes have significantly different universes of documents, and that many documents that were in the Global Relay archive are not in the live e-mail inboxes. The only logical conclusion is that Defendants intentionally and permanently deleted the only existing copies of emails from the relevant time period. Further, Defendants do not even claim that they have any other copies of the deleted Bloomberg messages.

## **Argument**

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). Courts have "broad discretion" when sanctioning parties for spoliation of evidence. *See id.* at 779. To obtain sanctions for the spoliation of evidence, Plaintiffs must show "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620, 628 (2d Cir. 2018). Plaintiffs easily satisfy this standard.

As already set out above, since 2012, let alone since the filing of this lawsuit, Defendants were clearly under an obligation to preserve all potentially relevant sources of documents. It strains credulity to believe that in December 2016 Defendants—who were operators of a hedge fund



March 25, 2021
Page 3

that at one time had hundreds of millions of dollars under management, and had been involved for years in litigation about the relationship between Plaintiffs and the Pursuit entities—did not understand this obligation. Next, the circumstances strongly support a finding of intentional and bad faith destruction. Schepis affirmatively requested that Global Relay implement the document destruction policy. *See* Ex. 1, pp. 5-6. Moreover, the timing of the destruction—when multiple litigations seeking millions of dollars, many of which were in active discovery, were pending and moving forward—strongly suggests the destruction was done in bad faith. *See In re Gorsoan Ltd.*, 2020 WL 3172777, at *8 (collecting cases holding that the timing of destruction can allow the Court to infer bad faith). Indeed, at the time Schepis directed Global Relay to implement the document destruction policy, various Pursuit entities had already been sanctioned or otherwise found culpable for discovery violations, including in 2013 decisions in the 2012 AAA arbitration and an October 14, 2016 order in the *Alpha Beta* matter. [*See* Dkt. #193-8, ECF pp. 8, 25, 48-53 of 53]; Ex. 2 (excerpt from *Alpha Beta* Dkt. #342). Finally, Defendants' approach to discovery to date further supports a finding of bad faith. Among other things, in the various litigations Defendants have refused to produce any documents from the existing Global Relay archive. In fact, they represented in sworn affidavits that no more responsive documents existed, only to later produce thousands of pages of documents from their email inboxes–but only upon Plaintiffs' discovery of the destruction of Global Relay documents. In short, Defendants' consistent bad faith approach to discovery strongly suggests that this deletion of documents was an intentional, bad faith decision.

Finally, the documents destroyed undoubtedly contain information that is relevant to the claims and defenses in this case. Fed. R. Civ. P. 37(e)(2) expressly recognizes that when a party intentionally deprives another of discovery, the Court may "presume that the lost information was unfavorable to the party" who destroyed the documents. Similarly, the destroyed documents appear to be from before February 13, 2016. Most of the events relevant to this lawsuit took place before February 13, 2016, and thus the vast majority of relevant emails and Bloomberg messages would necessarily come from that time period. [Dkt. #193]. Moreover, there were tens of thousands of hits on search terms in the Global Relay documents that were not destroyed, far more than in the live email inboxes, strongly suggesting that the deleted pre-February 13, 2016 documents would contain at least as many hits for potentially relevant documents. The only logical conclusion is that the destroyed documents would be relevant to, and likely would support, Plaintiffs' claims.

Under the circumstances, sanctions, including a default judgment, adverse trial inferences, shifting the burden of proof to Defendants, and/or attorney's fees and costs are warranted to ensure that Plaintiffs are not further prejudiced by Defendants' brazen destruction of evidence. Plaintiffs seek the Court's permission to pursue this matter with a motion for sanctions. Plaintiffs have conferred with Defendants, who oppose any request for sanctions.



March 25, 2021
Page 4


Respectfully Submitted

/s/ *Paul A. Tuchmann*

Paul A. Tuchmann
John M. Doroghazi
Kristyn L. Hansen

*Attorneys for Plaintiffs*

cc: all counsel of record