# EXHIBIT 2

| | |
|---|---|
| X08 FST CV 15-5014970-S | : SUPERIOR COURT |
| ALPHA BETA CAPITAL PARTNERS, LP | : JUDICIAL DISTRICT OF STAMFORD/NORWALK |
| V. | : AT STAMFORD |
| PURSUIT INVESTMENT MANAGEMENT LLC, et al. | : OCTOBER 14, 2016 |

## MEMORANDUM OF DECISION

### I. Background

This case arises out of the plaintiff's investments in two hedge funds which were structured as limited partnerships, the defendant Pursuit Opportunity Fund, I, L.P. (POF) and the defendant Pursuit Capital Management Fund I, L.P. (PCM). POF and PCM are among a group of companies established and operated by the defendants Anthony Schepis (Schepis) and Frank Canelas, Jr. (Canelas) which companies will be described in more detail later but are generally referred to as the Pursuit Investment Group. At one point in time the Pursuit Investment Group managed assets in excess of $600,000,000. The years 2007 and 2008 were years of great volatility in the investment markets in which liquidity was at a premium and as a result most of the investors in the Pursuit Investment Group withdrew or redeemed their investments and the total assets under management by the Pursuit Investment Group dwindled.

The defendants next claim that the net proceeds need to be divided 52.8% to PCM Master and 47.2% to POF Master. The court agrees with the defendants in this regard. The CSA clearly indicated that the plaintiff was only entitled to PCM's interest. (PCM, of course had no interest in POF Master). The plaintiff had earlier withdrawn and redeemed its interest in POF and the CSA contains a broad release concerning any claims arising out of the redemption of the plaintiff's interest in POF. At the time the plaintiff executed the CSA the UBS litigation had already begun and the amended complaints in that case expressly claimed that both PCM Master and POF Master had purchased the troubled CDOs from UBS. The evidence presented to this court established that the ratio of those purchases between PCM Master and POF Master are consistent with the defendants claims. That evidence consisted with testimony from Berg Simpson concerning the nature of the claims made in the UBS litigation, the actual trade tickets evidencing the transactions, the amended complaints in the UBS action which set forth the transactions by which both PCM Master and POF Master acquired the CDOs. The evidence also demonstrated that the expenses that were incurred in pursuing the UBS litigation were born in relatively equal amounts by both PCM Master and POF Master. While the plaintiffs assert that the defendants lack credibility in this regard because Schepis and Canelas have an interest in moving as large a percentage to POF Master as possible because they have a significantly greater interest in POF Master than PCM Master the court finds the evidence presented sufficient to sustain its finding. Accordingly, the court finds that PCM Master's interest in the net settlement proceeds was 52.8 percent or $15,364,800.

(3) The Claimed Division of PCM Master's Proceeds

The defendants additionally claim that PCM Master's interest must be divided 90% to

PCM and 10% to the other investors of PCM Master who coincidentally happen to be Schepis and Canelas (through PCM offshore). By April 2010 all of the investors of PCM Master other than PCM had redeemed. On May 6, 2009 Schepis and Canelas deposited $1,100,000 into the PCM Master account. This arguably became the only other investment in PCM Master other than PCM. It is this deposit which forms the basis for the defendants claim that PCM is only entitled to 90% interest in the proceeds to which PCM Master is entitled. There are several problems with the claim of the defendants. First, the deposit was made after all other investors in PCM Master other than PCM had redeemed; Second, the deposit was made after the CDOs had been purchased and after suit had been instituted; Third, the deposit amounted to little more than parking cash which Schepis and Canelas retained complete control over in order to assert a claim for a percentage of the UBS proceeds. This is verified by the fact that in excess of $1,100,000 was withdrawn from the PCM Master account by August 2010 (eight months before the CSA had been signed). Essentially the defendants claim that Schepis and Canelas could gain an interest in a valuable claim (which other investors were pledging substantial assets to prosecute) by parking cash in an account after the fact, which cash could be withdrawn or moved without any risk or at least without risk comparable to that involved in the CDO transactions which gave rise to the UBS claim. The claim strains credibility. It was an investment after the initial risk had been taken and withdrawn before the CSA had been executed. It was managed independent of any risk participated in by the PCM investors. To the extent that PCM Master chose to make investments utilizing the cash any such returns were not shared by the PCM investors. The second problem with the defendants position is that the defendants had not been forthcoming in their compliance with the court's discovery orders both in terms of the timeliness of that compliance and in terms of the completeness of that compliance all

31

of which hamper their credibility as to this issue. The records and the testimony are simply not supportive of the defendants position.

Finally, Schepis' testimony as to this issue is not particularly credible either. His explanations were not complete. They were inconsistent and varied from his earlier testimony during the PJR proceedings. Without credible and complete evidence supporting the defendants position the court concludes that the plaintiffs have sustained their burden that they are entitled to 32.08 percent of PCM Master's interest (since PCM held 100% of PCM Master) in the UBS proceeds or $15,364,800.

(4)     The Performance Fee.

The CSA provides that the plaintiffs interest in the contingent assets shall be governed by the LPA. The LPA provides that "20 percent of the limited partner share of cumulative fiscal period net economic profit (including net profits in the new issue account) provisionally allocated to each limited partner for the calendar year . . . shall be reallocated to the general partner." In other words the general partner is entitled to a performance fee equal to 20 percent of the net profits experienced by the limited partner. The disagreement between the parties regarding the performance fee arises out of a dispute as to how net profit is calculated. The defendants argue that, because in April 2009 the parties executed an amended and restated limited partnership agreement after investors were given an opportunity to withdraw or remain invested, the value of the plaintiff's interest was reestablished at that time, and after consideration for the disbursements made relative to the LBIE claim, 100 percent of the UBS proceeds represents profit as contemplated in the LPA. The plaintiff argues that the profit must be based upon the initial investment made by the plaintiff in 2007, the value of which was substantially reduced when the value of the purchased

32

For all the reasons stated herein judgment may enter in favor of the plaintiff against the defendants PCM, POF, PIM, Schepis, Canelas and Northeast on Counts One and Counts Two and the plaintiff is awarded damages against those defendants in the amount of $4,929,582 plus prejudgment interest at the rate of 10 percent per year from October 16, 2015 (the date that the plaintiff's interest in the UBS proceeds should have been remitted to the plaintiff) until October 16, 2016 in the amount of $492,958 for a total of $5,422,540. Post judgment interest will continue to accrue at the rate of 10 percent per annum on all outstanding amounts until paid.

Judgment may enter for the defendants Pursuit Partners, PCM Master and POF Master on Counts One and Two. Judgment may enter in favor of all the defendants on Counts Three through Eight. Judgment may enter for the plaintiff on the counterclaims.

BY THE COURT

*Decision entered in accordance with the foregoing 10/14/16.*

GENUARIO, J.